# United States Court of Appeals
## For the First Circuit

No. 00-1694

ALWYN COLIN GRIFFITHS,

Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF

THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, Stahl and Lynch, <u>Circuit Judges</u>.

<u>Richard L. Iandoli</u> for petitioner.

<u>David M. McConnell</u>, Office of Immigration Litigation, Civil Division, with whom <u>David W. Ogden</u>, Assistant Attorney General, Civil Division, <u>Michael P. Lindemann</u>, Assistant Director, and <u>Terri J. Scadron</u>, Senior Litigation Counsel, Office of Immigration Litigation, were on brief, for respondent.

March 16, 2001

**LYNCH, <u>Circuit Judge</u>**.  The Board of Immigration Appeals found that Alwyn Colin Griffiths had been "convicted" of a firearms violation and ordered him deported under § 241(a)(2)(C) of the Immigration and Nationality Act of 1952, previously codified at 8 U.S.C. § 1251(a)(2)(C).  The BIA also denied his request for discretionary relief from deportation.  Griffiths challenges whether the "guilty-filed" disposition of his firearms violation under Massachusetts law was sufficiently final to constitute a "conviction" within the meaning of the INA.  Petitioner also challenges the BIA's failure to address his request for a § 212(h) waiver and the denial of his request for voluntary departure under § 242.  We remand the case to the BIA.

**I.**

Griffiths, a citizen of Jamaica, has lived as a lawful resident in this country since 1985.  He is the son of a U.S. citizen mother and a lawful permanent resident father, and is the father of three minor U.S. citizen children.

In 1990, at eighteen years of age, Griffiths was charged in the Dorchester District Court with carrying a firearm without a license and unlawful possession of ammunition, in violation of section 10 of Chapter 269 of the Massachusetts General Laws.  On January 7, 1991, he was convicted and sentenced to one-year's probation, as well as a suspended six-month term of imprisonment.

-3-

On September 19, 1991, the INS ordered Griffiths to show cause why he should not be deported under former § 241(a)(2)(C) of the INA, 8 U.S.C. § 1251(a)(2)(C), based on this firearms conviction.[1] At the deportation hearing on October 19, 1992, Griffiths conceded the INS's factual allegations and deportability, but sought an opportunity to apply for relief from deportation by way of an adjustment of status and a § 212(h) waiver of inadmissibility based on purported hardship to his U.S. citizen family relations. Over the INS's objection, the immigration judge granted a continuance, and Griffiths filed applications for adjustment of status and a § 212(h) waiver.

On April 28, 1993, while his deportation case was continued, the Dorchester District Court granted Griffiths's motion for a new trial on the firearms offense, which had formed the basis for the deportation charge. This was two years after his initial conviction and after he had served his term of probation. The apparent basis for vacating the conviction was uncertainty over whether a deportation warning required by state law had been given. After the initial conviction was vacated, the court reduced the firearms charge from unlawful carrying a firearm to unlawful possession of a firearm, and

---

[1] In 1991, Griffiths was also charged with (and ultimately convicted of) assault with a dangerous weapon. This conviction did not form the basis of the deportation charge, but is relevant to petitioner's applications for discretionary relief.

Griffiths admitted to sufficient facts to support both the revised firearms and the ammunition charges. The criminal court did not impose any additional punishment, but found him guilty and placed the criminal charge "on file."

On April 29, 1993, Griffiths moved to terminate the deportation proceedings against him, contending that he no longer stood convicted as alleged in the order to show cause. He argued to the immigration judge that the "guilty-filed" disposition of the renewed charges was not sufficiently final to support an order of deportation, citing Pino v. Landon, 349 U.S. 901 (1955). Petitioner contended that that disposition of the criminal charge did not qualify as a conviction under the definition set forth in the BIA decision, Matter of Ozkok, 19 I. & N. Dec. 546 (BIA 1988), which governed at the time. The INS countered that the portion of the definition in Matter of Ozkok relied on by petitioner in fact governed only cases where adjudication of guilt was deferred and thus there was no "formal judgment of guilt" entered, while in this case the criminal court entered a formal finding of "guilty," a finding which was sufficient to support a charge of deportability. On May 7, 1993, the immigration judge found that the "guilty-filed" disposition was a conviction, mistakenly denied petitioner a § 212(c) waiver (which is a discretionary waiver based on equitable factors, and for which Griffiths had not applied), denied petitioner's request for voluntary departure, and ordered Griffiths

deported. The immigration judge failed to address petitioner's application for a § 212(h) waiver, the waiver for which he actually had applied.

Griffiths timely appealed his deportation order to the BIA, again contending that the "guilty-filed" disposition was not of sufficient finality to constitute a conviction for immigration purposes. While Griffiths's appeal was pending, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996), which amended the INA to include (for the first time) a statutory definition of "conviction" for federal immigration purposes. See INA § 101(a)(48)(A), 8 U.S.C. § 1101(a)(48)(A). On May 9, 2000, the BIA dismissed Griffiths's appeal from the order of deportation, agreeing with the INS that the "guilty-filed" disposition was sufficient to support the deportation charges against him under this new statutory definition of conviction. The BIA relied on its intervening determination in Matter of Punu, Int. Dec. 3364, 1998 WL 546634 (BIA 1998), that the statutory definition of "conviction" broadened the scope of "conviction" for immigration purposes to encompass some deferred adjudications, even where the right to further appellate review of the issue of guilt or innocence on such deferred adjudications remained available. The BIA affirmed the immigration judge's denial of a § 212(c) waiver, and found that without such waiver he could not qualify for adjustment of status. Like the

immigration judge, the Board failed to address the application for a §
212(h) waiver, nor did it address his request for voluntary departure
in lieu of deportation.  Griffiths now petitions this court for review
of the Board's decision.

**II.**

A.  The Scope of Review

We review de novo an agency's construction of a statute that
it administers, although subject to established principles of
deference.  See INS v. Aguirre-Aguirre, 526 U.S. 415, 424-25 (1999);
Herrera-Inirio v. INS, 208 F.3d 299, 304 (1st Cir. 2000). Under those
principles of deference, if the intent of Congress is clear, it must
govern, but where the statute is silent or ambiguous on an issue, the
question for the court is whether the agency's interpretation is based
on a permissible construction of the statute.  See Chevron U.S.A., Inc.
v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43
(1984); Herrera-Inirio, 208 F.3d at 304.  Since "agency officials
acting in the immigration context 'exercise especially sensitive
political functions that implicate questions of foreign relations,'
deference to administrative expertise is particularly appropriate."
Herrera-Inirio, 208 F.3d at 304, quoting INS v. Abudu, 485 U.S. 94, 110
(1988).

B.  The Definition of "Conviction" for Immigration Purposes

At issue here is what it means to be "convicted" of an offense within the terms of former § 241(a)(2)(C) of the INA, 8 U.S.C. § 1251(a)(2)(C), now codified at 8 U.S.C. § 1227(a)(2)(C). What it means to be "convicted" of a crime for immigration purposes has been the source of much debate. While the INA compels consideration of various state criminal laws and procedures because it allows state convictions to form the basis for deportation, the question of what constitutes a "conviction" sufficient to afford such a basis is a question of federal, not state, law. See, e.g., White v. INS, 17 F.3d 475, 479 (1st Cir. 1994).

Before the enactment of IIRIRA in 1996, the INA did not provide any statutory definition of "conviction" for immigration purposes. The Supreme Court briefly addressed the meaning of the term in a two-sentence per curiam opinion, Pino v. Landon, 349 U.S. 901 (1955). In that case, the Supreme Court addressed the decision of this court in Pino v. Nicolls, 215 F.2d 237 (1st Cir. 1954), which found that a criminal conviction placed "on file" in Massachusetts qualified as a conviction for the purposes of the INA. The Supreme Court reversed, holding that "[o]n the record here we are unable to say that the conviction has attained such finality as to support an order of deportation" under the INA. 349 U.S. at 901.

The BIA attempted to create uniformity in the treatment of various state methods of disposing of criminal cases by creating a

-8-

controlling definition of "conviction" for immigration purposes in

Matter of Ozkok, 19 I. & N. Dec. 546 (BIA 1988), which included a

three-part test to apply where adjudication of guilt had been withheld

under state procedures.[2]

     This court again addressed the Massachusetts practice of

placing criminal cases "on file" in White v. INS, 17 F.3d 475 (1st Cir.

1994), though not in the context of forming the basis of a deportation

charge.  There we applied the standard set out in Matter of Ozkok and

---

[2]    In Matter of Ozkok, the BIA concluded that it would "consider a person convicted if the court has adjudicated him guilty or has entered a formal judgment of guilt."  19 I. & N. Dec. at 551.  Where adjudication of guilt had been withheld, however, further examination of the state procedure is required, and the BIA held that where adjudication of guilt was withheld, a "conviction" for immigration purposes could nevertheless be found if the following elements were present:

    (1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilty;

    (2) the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed . . .; and

    (3) a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge.

Id. at 551-52.  Superimposed on these three elements was the requirement of a degree of finality, imported from Pino v. Landon.  See id. at 553 n.7.

held that, in weighing the equities while considering a § 212(c) waiver, the BIA erred in considering "filed" criminal charges to be convictions for immigration purposes. Id. at 479. See also Molina v. INS, 981 F.2d 14, 18-20 (1st Cir. 1992) (Rhode Island nolo contendere plea plus probation, which was not considered a "conviction" under state law upon completion of probation, was "conviction" under federal immigration laws).

Against this background, in 1996 Congress enacted IIRIRA, which, among other things, added a definition of the term "conviction" for federal immigration purposes to the INA. See IIRIRA § 322(a), amending INA § 101(a)(48)(A); 8 U.S.C. § 1101(a)(48)(A). That definition of "conviction" is as follows:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court, or, if adjudication of guilt has been withheld, where--
>
> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

INA § 101(a)(48)(A). Though enacted after the relevant conduct, this definition governs on Griffiths's appeal. See IIRIRA § 322(c) ("EFFECTIVE DATE.-- The amendments made by subsection (a) shall apply to convictions and sentences entered before, on, or after the date of the enactment of this Act.").

The Congressional Conference Committee Report accompanying

IIRIRA commented on Congressional intent in drafting IIRIRA § 322:

> This section deliberately broadens the scope of the definition of "conviction" beyond that adopted by the Board of Immigration Appeals in Matter of Ozkok, 19 I&N Dec. 546 [1988 WL 235459] (BIA 1988).  As the Board noted in Ozkok there exist in the various States a myriad of provisions for ameliorating the effects of a conviction. As a result, aliens who have clearly been guilty of criminal behavior and whom Congress intended to be considered "convicted" have escaped the immigration consequences normally attendant upon conviction.  Ozkok, while making it more difficult for alien criminals to escape such consequences, does not go far enough to address situations where a judgment of guilt or imposition of sentence is suspended, conditioned upon the alien's future good behavior.  For example, the third prong of Ozkok requires that a judgment or adjudication of guilt may be entered if the alien violates a term or condition of probation, without the need for any further proceedings regarding guilt or innocence on the original charge.  In some States, adjudication may be "deferred" upon a finding or confession of guilt, and a final judgment of guilt may not be imposed if the alien violates probation until there is an additional proceeding regarding the alien's guilt or innocence.  In such cases, the third prong of the Ozkok definition prevents the original finding or confession of guilt to be considered a "conviction" for deportation purposes. This new provision, by removing the third prong of Ozkok, clarifies Congressional intent that even in cases where adjudication is "deferred," the original finding or confession of guilt is sufficient to establish a "conviction" for purposes of the immigration laws.

H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess. 1996, 1996 WL 563320 at *496-97.

The BIA has interpreted the definition of "conviction" in INA § 101(a)(48)(A) in Matter of Punu, Int. Dec. 3364, 1998 WL 546634 (BIA 1998).  In that case, the Board, sitting en banc, addressed a Texas

-11-

criminal procedure that deferred adjudication of the criminal charge and placed the defendant on probation, but allowed for the possibility of further appellate review on the question of the defendant's guilt or innocence. The Board found that the defendant was "convicted" for immigration purposes under the new definition, as there was a finding of guilt and the imposition of probation. See id.; see also Moosa v. INS, 171 F.3d 994 (5th Cir. 1999) (affirming the conclusion that a deferred adjudication under Texas law was a conviction for federal immigration purposes), reversing Martinez-Montoya v. INS, 904 F.2d 1018 (5th Cir. 1990) (holding that deferred adjudication under Texas law did not qualify as "conviction" for federal immigration purposes under the pre-IIRIRA definition). Implicit in this holding is a conclusion that the "finality" requirement no longer applied to deferred adjudications under the new definition, as the concurrence makes explicit. See Matter of Punu, Int. Dec. 3364, at 12 (Grant, Board Member, concurring); see also Moosa, 171 F.3d at 1009 ("finality is no longer a requirement"). Matter of Punu did not purport to deal with the issue of finality under the first prong of the new IIRIRA definition of a conviction, where there is "a formal judgment of guilt." It addressed only the second prong of the new definition, where "adjudication of guilt has been withheld."

C. The "Guilty-Filed" Procedure in Massachusetts Law

-12-

Massachusetts criminal procedure allows a court to place a case on file either before or after the plea where "public justice does not require an immediate sentence." Commonwealth v. Dowdican's Bail, 115 Mass. 133, 136 (1874). Under Massachusetts law, the guilty-filed procedure "suspends the adjudicative process, including the defendant's right to appeal, until such time as the court reactivates or makes some further disposition of the case." White, 17 F.3d at 479. Over 125 years ago, the Supreme Judicial Court of Massachusetts described the process:

> It has long been a common practice in this Commonwealth, after verdict of guilty in a criminal case, when the court is satisfied that, by reason of extenuating circumstances . . . or other sufficient cause, public justice does not require an immediate sentence, to order, with the consent of the defendant and of the attorney for the Commonwealth, and upon such terms as the court in its discretion may impose, that the indictment be laid on file . . . .. Such an order is not equivalent to a final judgement, or to a nolle prosequi or discontinuance, by which the case is put out of court; but is a mere suspending of active proceedings in the case . . . and leaves it within the power of the court at any time, upon the motion of either party, to bring the case forward and pass any lawful order or judgment therein.

Dowdican's Bail, 115 Mass. at 136. Despite the SJC's reference to "after verdict," a charge can be filed "at any stage," White, 17 F.3d at 479, even prior to trial or change of plea. A guilty-filed disposition involves "an admission of sufficient facts for a possible finding of guilt, but not an explicit admission of guilt." United States v. Tavares, 93 F.3d 10, 13 n.3 (1st Cir. 1996). Because filing

-13-

of a charge "is not a final judgment" or "equivalent to sentencing," Commonwealth v. Bianco, 454 N.E.2d 901, 903-04 (Mass. 1983), the process "suspend[s], for as long as the case remains on file, the defendant's right to appeal alleged error in the proceeding," Commonwealth v. Delgado, 326 N.E.2d 716, 719 (Mass. 1975). It is for that reason that a defendant must consent to filing. See id.

## D. Application of the Definition to the "Guilty-Filed" Disposition

Griffiths contends that the "guilty-filed" disposition of the criminal charges against him does not qualify as a "conviction" for immigration purposes. Recall that the definition has two alternate prongs for finding a "conviction." The first prong involves cases where there has been "a formal judgment of guilt." The second prong applies to deferred adjudications, and requires the presence of additional elements. Griffiths argues that his "guilty-filed" disposition does not fall within either prong of the definition. First, he argues that there is a finding of guilt but no "formal judgment of guilt," and therefore there is no conviction under the first prong of INA § 101(a)(48)(A). On the other hand, he says, the elements for finding a conviction where the adjudication of guilt has been deferred are not met, as the Massachusetts court did not impose any "form of punishment, penalty, or restraint on [Griffiths's] liberty." In any case, he says, the finality requirement of Pino v.

-14-

Landon presents a separate and remaining bar, as he retains his rights to direct appellate review.

The INS responds that the notation of the Dorchester District Court on the docket sheet that Griffiths was "guilty" prior to placing the case on file reflects a formal judgment of guilt, and therefore the petitioner has been "convicted" of a crime for immigration purposes under the first prong of INA § 101(a)(48)(A). In any case, the INS says, the court entered a finding of guilt and Griffiths served a year of probation for the conduct, so he is "convicted" under the second prong of the statute as well. As to the second prong, the pre-IIRIRA finality requirement, according to the INS, was an interpretation of the statutory meaning of the bare term "convicted" that was superceded by the Congressional enactment of an express statutory definition. Therefore Griffiths's theoretical right to appeal the guilty-filed case, should it ever be brought forward, is not relevant to the finding that he was "convicted" for immigration purposes under the second prong of the statute.

We read the Board's decision in this case to hold that the guilty-filed disposition of Griffiths's case was a conviction for federal immigration purposes under the second prong laid out in INA § 101(a)(48)(A), which applies in cases where the "adjudication of guilt has been withheld." While the Board's sparse opinion does not state this explicitly, it rests its conclusion that Griffiths had been

-15-

convicted "upon our reasoning in Matter of Punu," and Punu in turn addressed only that second prong of the definition.

The BIA's reliance on the second prong of the definition in this case is appropriate. While the immigration judge analyzed the case under the first prong, the record does not support finding a formal judgment of guilt. The structure of the statutory definition in § 101(a)(48)(A) requires that finding a formal judgment of guilt under the first prong of the definition entails a showing of something beyond a simple finding of guilt such as in the case-filed situation. Otherwise the reference in the second prong of the statute to deferred adjudications where either a judge or a jury has "found the alien guilty" would be rendered superfluous. See INA § 101(a)(48)(A)(i); 8 U.S.C. § 1101(a)(48)(A)(i). The simple notation of "guilty-filed" on the docket sheet does not support the conclusion that Griffiths has been "convicted" within the meaning of the statute because there has been a "formal judgment of guilt."

Instead the BIA assessed whether the guilty-filed disposition under Massachusetts law fell within the category demarcated by the second prong, where Congress has determined that there is sufficient evidence of a conviction for federal immigration purposes despite the fact that the state has withheld adjudication of guilt. In Matter of Punu, the BIA addressed this category and interpreted INA § 101(a)(48)(A) to encompass deferred adjudications regardless of the

-16-

possibility of further appellate review on the issue of guilt or innocence. Applying that interpretation to this case, the Board here found that like deferred adjudications under Texas law, the guilty-filed disposition under Massachusetts law could qualify as a conviction for federal immigration purposes. Thus under the BIA's construction of the statutory definition, finality is no longer a requirement in cases where the adjudication of guilt has been withheld.[3]

Since the Board's interpretation of the statutory definition is a permissible construction of the statutory language, petitioner's argument that a lack of sufficient finality bars a finding of conviction in his case is unavailing. Most importantly, the Board's understanding of the treatment of cases where the adjudication of guilt is withheld is not inconsistent with the plain language of the statute. In fact, the BIA's interpretation of the statute reflects a rather straight-forward application of its language. The language of the statute as to the second prong requires two elements -- (i) some

---

[3]    The Board did not address the meaning of the first prong of INA § 101(a)(48)(A), governing cases where there is a "formal judgment of guilt," in its decision construing the statute, Matter of Punu. See Int. Dec. 3364, n.1 (Grant, Board Member, concurring) ("For example, this opinion does not address the circumstance of an alien against whom a formal adjudication of guilt has been entered by a court, but who has pending a noncollateral post-judgment motion or appeal."). Since we address petitioner's case here under the second test, we likewise do not address any finality requirements for finding a conviction under this first prong.

sufficient finding of support for a conclusion of guilt, and (ii) the imposition of some form of punishment -- in order to find a "conviction" for immigration purposes. The Board likewise requires that both of those elements be found. Nor does the language of the statute, on its face, impose any additional requirements, such as finality. This reading is reinforced by recognition of the fact that Congress enacted this particular language against the background of the more stingy definition of "conviction" in Matter of Ozkok. Moreover, the Board's conclusion is buttressed by the legislative history of the provision adding the definition, IIRIRA § 322, which expressly contemplates that the original finding of guilt may be sufficient to establish a "conviction" under the definition in cases where adjudication has been deferred despite the theoretical availability of additional proceedings regarding guilt or innocence.

There may be a permissible interpretation of the new statutory definition in which the requirement from Pino v. Landon that deferred adjudications exhibit a certain degree of finality persists beyond the enactment of the definition of "conviction" in IIRIRA. But the BIA's conclusion that it does not is not unreasonable. Since the Board's interpretation of the treatment of cases where the adjudication of guilt is withheld is both wholly consistent with the plain language of the definitional statute and reflects a reasonable understanding of

the purposes of its enactment, we must defer to that interpretation. See Chevron, 467 U.S. at 842-43; Herrera-Inirio, 208 F.3d at 304.

Petitioner argues that since his right to appeal remains intact as a theoretical matter, the INS position would mean that deportation was available to the INS in cases where the trial court has entered a guilty verdict but there are post-judgment motions or direct appeals pending in the case. This is simply not the case. The INS was careful at oral argument to say that it was not taking the position it could deport someone adjudicated guilty while their appeal or appeal period was pending. Such guilty adjudications would fall under the first prong. Both the statutory language and the legislative history reflect a determination that a distinct mode of treatment for deferred adjudications is appropriate in this context.

Nor is this difference unreasonable. There are substantial practical differences between the situation faced by a defendant currently exercising a direct appellate right and that faced by a defendant with a theoretically available right to appeal that lay dormant until and unless the case is later brought forward off the file. In the former case, there is a determinate end to the proceedings. Also, while a defendant in

-19-

a case disposed of as "guilty-filed" has not waived his or her right to appellate review, under Massachusetts law, the defendant must consent to placing the case on file, and thus has waived any right to immediate review or control over the prospect of review. Hence the BIA's conclusion that the new statutory definition does not require finality in cases where the adjudication of guilt has been withheld is not an unreasonable construction of the statute.

Apart from the validity of the BIA's interpretation of the statute, however, a question remains whether, on the facts of the present case, the statutory elements required by the second prong are met. While acknowledging a finding of guilt, Griffiths contends that the court did not impose any form of punishment upon placing his case "on file," and therefore he was not convicted under the second prong even under the BIA's interpretation of the required elements. The INS responds that he had served probation for the same offense, though on the prior, vacated conviction. We conclude that the factual record as it now stands does not answer the question of whether the state judge imposed some form of punishment on Griffiths in the case that was placed on file. This omission may well stem from the fact that the immigration judge analyzed the case under the first prong, as to which the punishment question is irrelevant.

The sequence of events in this case might reasonably lead to the conclusion that, as a practical matter, the state judge intended to sentence Griffiths to time-served on the charge. That is, the state court judge may not have imposed any punishment upon the "guilty-filed" disposition of the case in April 1993 in order to avoid imposing additional punishment, since (as the record shows) Griffiths had served a year's probation from January 1991 to January 1992 on the conviction that was subsequently vacated, but that rested upon the same charge as the case being placed on file. Instead, the state court may have simply pragmatically incorporated this past punishment for the present charge.

However, the record is devoid of evidence that actually establishes a link between this period of probation and the case placed on file. The docket sheet contains no indication expressly linking the probation period to the subsequent disposition. The record does not contain notes or affidavits from the state judge or the state prosecutor establishing such a link. Nor has the immigration judge or the BIA made any such finding explicitly. In the absence of such a finding or clear evidence on the record, we are reluctant to reach a conclusion about whether Griffiths has been convicted under the second prong of the definition in § 101(a)(48)(A).

It is possible that the BIA could find, with adequate facts, that the state court judge took Griffiths's prior probationary period

-21-

into consideration in deciding not to impose any punishment upon placing the case on file. With such facts, it is arguable that the BIA could permissibly conclude that the "guilty-filed" disposition of Griffiths's case was sufficient to establish a conviction for federal immigration purposes.[4] However, those facts are not established on the record before us. Where a reviewing court cannot sustain an agency decision because it has failed to offer a legally sufficient basis for that decision, the appropriate remedy is remand to the agency for further consideration. See Gailius v. INS, 147 F.3d 34, 47 (1st Cir. 1998). We think a remand is particularly appropriate where the lack of factual development stems from confusion about the meaning of a new statute. Therefore, we remand this case to the BIA.

## III.

Griffiths also raises two issues regarding discretionary relief which were fully briefed and we resolve. Griffiths sought two forms of relief from the deportation order before the agency below: adjustment of status to lawful permanent resident, and voluntary departure in lieu of deportation. Griffith faced a significant hurdle to qualify for adjustment of status under § 245 of the INA. Because he had been convicted of a criminal offense, assault with a dangerous

---

[4] Griffith's assault conviction might provide an independent basis for deportation. Nothing before us indicates whether the INS sought deportation on that ground.

-22-

weapon, he was inadmissible under the INA.  Therefore, in order to obtain an adjustment of status, Griffiths first had to obtain a waiver of inadmissibility.  To this end, he submitted an application to the immigration judge for a § 212(h) waiver.  Both the immigration judge and the BIA mistakenly considered his eligibility for a § 212(c) waiver, and concluded that he was not eligible.  The immigration judge also denied his application for voluntary departure.

## A.  Section 212(h) Waiver

Petitioner sought a § 212(h) waiver of inadmissibility in order to obtain relief from the deportation order by means of an adjustment of status.  Section 212(h) allows waiver of inadmissibility where inadmissibility results from criminal activity, the immigrant is "the spouse, parent, son, or daughter of a citizen of the United States," and denial of the admission would result in "extreme hardship" to that person.  See 8 U.S.C. 1182(h)(1)(B).  Here, the petitioner is both the son of a U.S. citizen and the parent of three U.S. citizens.  The immigration judge and the BIA both failed to address the application for a § 212(h) waiver, instead in error considering and rejecting the petitioner's eligibility for a § 212(c) waiver.  Petitioner seeks a remand to the Board to consider his eligibility for the § 212(h) waiver.[5]

---

[5]    The petitioner's concurrent request to the BIA for reconsideration on this issue is also currently pending before

Where, as a matter of law, Griffiths is ineligible for the relief he sought, remand to the Board is unnecessary despite a clear error, as he suffers no unfair prejudice. See, e.g., White v. INS, 17 F.3d at 480, citing Liwanag v. INS, 872 F.2d 685, 687 n.2 (5th Cir. 1989). The plain language of the statute, as amended by IIRIRA, renders Griffiths ineligible for the discretionary consideration of hardship. Section 348 of IIRIRA amended § 212(h) to add the following sentence:

> No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if [ ] since the date of such admission . . . the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States.

8 U.S.C. § 1182(h)(1) (Supp. V 1999). This provision explicitly applies to pending applications. See IIRIRA § 348 (the amendment "shall be effective on the date of enactment of [IIRIRA], and shall apply in the case of any alien who is in exclusion or deportation proceedings as of such date unless a final administrative order in such proceedings has been entered as of such date."). Since the Board did not issue its final order of deportation in the case until May 9, 2000, this provision applies to Griffiths's waiver application. Under the amended provision, Griffiths is statutorily ineligible for a § 212(h)

the BIA.

waiver of inadmissibility because he was placed into deportation proceedings on September 19, 1991, less than seven years after November 9, 1985, when he was admitted to the United States. Since petitioner could not have circumvented this clear statutory bar to his waiver application, remand for consideration of the application for waiver and adjustment of status would serve no useful purpose, and therefore his request is denied.

B. Application for Voluntary Departure

On appeal, petitioner argues that he is now statutorily eligible for voluntary departure. He concedes that in 1993, when he applied to the immigration judge for voluntary departure, the immigration judge was correct to conclude that he was ineligible because he was not a person of good moral character at the time, as required by former INA § 244(e); 8 U.S.C. § 1254(e) (1994), now codified at 8 U.S.C. § 1229c(b)(1). He was unable to meet the "good moral character" requirement because of his conviction for assault with a dangerous weapon within five years of the date of the judge's decision. See INA § 101(f)(3); 8 U.S.C. § 1101(f)(3) (precluding a finding of "good moral character" where alien was convicted of certain criminal offenses, including the assault offense at issue here, during the period in which such character was required). Nevertheless petitioner maintains that due to the intervening passage of time, petitioner was eligible at the time of the BIA's final order in May

-25-

2000, since more than five years had elapsed since the assault conviction. However, while petitioner may have accrued five years of good moral character during the pendency of his deportation case, it is immaterial, as the relevant period for which he must show good behavior is the five years "immediately preceding" his application, not those preceding the final decision. See 8 U.S.C. § 1254(e) (1994). Therefore he is not eligible for voluntary departure.

**IV.**

For the reasons stated, we conclude that the Board did not properly determine that the petitioner was convicted for immigration purposes under the statutory definition supplied by INA § 101(a)(48)(A). The order of the Board of Immigration Appeals is <u>vacated</u>, and the case is <u>remanded</u> to the BIA for further proceedings consistent with this opinion.