PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

FRANKLIN EDUARDO CRESPO,

$\qquad$ *Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney
General,

$\qquad$ *Respondent.*

No. 09-2214

On Petition for Review of an
Order of the Board of Immigration Appeals.

Argued: October 28, 2010

Decided: January 11, 2011

Before SHEDD and DUNCAN, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Petition for review granted by published opinion. Judge
Shedd wrote the opinion, in which Judge Duncan and Senior
Judge Hamilton joined.

---

## COUNSEL

**ARGUED**: Dree Kristin Collopy, MAGGIO & KATTAR,
Washington, D.C., for Petitioner. James Eugene Grimes, Jr.,
UNITED STATES DEPARTMENT OF JUSTICE, Washing-
ton, D.C., for Respondent. **ON BRIEF:** Tony West, Assistant

Attorney General, Civil Division, Linda S. Wernery, Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

**OPINION**

SHEDD, Circuit Judge:

Franklin Eduardo Crespo, a citizen and native of Peru, petitions for review of the denial of his 8 U.S.C. § 1182(h) waiver. Crespo contends that the Board of Immigration Appeals (BIA) erred in determining that a 1997 adjudication under Virginia Code § 18.2-251 for possession of marijuana qualified as a "conviction" under 8 U.S.C. § 1101(a)(48)(A). Because the plain language of § 1101(a)(48)(A) does not encompass Crespo's 1997 adjudication, we grant the petition for review and remand the case to the BIA for further proceedings.

I.

Crespo entered the United States with a B-2 tourist visa in 1997. He overstayed this visa and remained in the United States, where he eventually married Diane Marie Duran, a United States citizen. Duran filed an I-130 Petition for Alien Relative on Crespo's behalf but, at some point, the marriage dissolved and the Immigration and Naturalization Service (INS) denied the petition.

In response, the INS issued Crespo a "notice to appear" on October 24, 2000, and later detained him in 2006 after Crespo pled guilty to assault and battery in Fairfax, Virginia. In 2001, prior to his detention, Crespo fathered a child with Rachel Crawford, a United States citizen. Following his release from detention in September 2006, he and Crawford married.

In January 2007, Crawford filed an I-130 Petition for Alien Relative on behalf of Crespo, and Crespo filed an I-485 Application to Adjust Status. After the I-130 petition was approved, Crespo sought a § 212(h) waiver[1]. Crespo's case was assigned to an Immigration Judge (IJ), who heard testimony regarding Crespo's good character from Crawford, Crespo's criminal defense attorney, and Crespo's sister. In a written decision, the IJ determined that Crespo was ineligible for § 212(h) relief because he had two convictions for marijuana possession: October 24, 1997 in Virginia and January 31, 2005 in Washington, D.C. Relevant here, the IJ determined that Crespo's 1997 prosecution, which occurred pursuant to Virginia Code § 18.2-251, counted as a "conviction" for immigration purposes under 8 U.S.C. § 1101(a)(48)(A) even though it was a deferred adjudication. In the alternative, the IJ concluded that Crespo did not warrant a waiver under § 212(h) because he failed to satisfy the extreme hardship standard.

Crespo filed a timely appeal with the BIA. The BIA dismissed Crespo's appeal, agreeing with the IJ that the 1997 adjudication counted as a "conviction" and that Crespo was thus ineligible for a § 212(h) waiver. The BIA further concluded that it "need not address" whether Crespo satisfied the extreme hardship standard in § 212(h) or otherwise merited discretionary relief. (J.A. at 4). This petition for review followed.

---

[1]A § 212(h) waiver is available for someone who is otherwise inadmissible to the United States because of a previous conviction, as long as the conviction was for, *inter alia*, a "single offense of simple possession of 30 grams or less of marijuana." 8 U.S.C. § 1182(h). The petitioning alien must also show that his removal would result in extreme hardship for a United States citizen or lawfully resident spouse, child, or parent. 8 U.S.C. § 1182(h)(1)(B).

## II.

In his petition, Crespo challenges the BIA's determination that his 1997 adjudication under Virginia Code § 18.2-251 constitutes a conviction under § 1101(a)(48)(A). This challenge raises a purely legal question regarding the BIA's interpretation of an immigration statute and our review is thus subject to the familiar standard of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). "Under this standard, we initially examine the statutory language, and if Congress has spoken clearly on the precise question at issue, the statutory language controls; however, if the statute is silent or ambiguous, we defer to the BIA's interpretation if it is reasonable." *Ramirez v. Holder*, 609 F.3d 331, 334 (4th Cir. 2010).

### A.

Crespo argues that the plain language of § 1101(a)(48)(A) supports his argument that his adjudication does not constitute a "conviction." In contrast, the Government contends that the unambiguous language supports the BIA's conclusion and that, to the extent the statute is ambiguous, the BIA's interpretation is reasonable given Congressional intent.

"When interpreting statutes we start with the plain language." *U.S. Dep't of Labor v. N.C. Growers Ass'n*, 377 F.3d 345, 350 (4th Cir. 2004). "It is well established that when the statute's language is plain, the sole function of the courts-at least where the disposition required by the text is not absurd-is to enforce it according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) (internal quotation marks omitted). In interpreting the plain language of a statute, we give the terms their "ordinary, contemporary, common meaning, absent an indication Congress intended [it] to bear some different import." *North Carolina ex rel. Cooper v. Tenn. Valley Auth.*, 515 F.3d 344, 351 (4th Cir. 2008) (internal quotation marks omitted).

We thus start with the language of the relevant statute, which provides:

> (48)(A) The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
>
> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A).

Section 1101(a)(48)(A) "leaves nothing to the imagination." *Herrera-Inirio v. I.N.S.*, 208 F.3d 299, 304 (1st Cir. 2000). That is, the statute "unambiguously encompasses within the definition of 'conviction' situations in which adjudications of guilt have been withheld, as long as the defendant's guilt has been established by a trial, plea, or admission, and a judicial officer orders some form of punishment, penalty, or restraint on the defendant's liberty." *Id.*[2]

Crespo's 1997 adjudication was pursuant to Virginia Code § 18.2-251, which applies to a first offender who "pleads

---

[2]The legislative history also supports this reading of § 1101(a)(48)(A):

> This new provision . . . clarifies Congressional intent that even in cases where adjudication is "deferred," the original finding or confession of guilt is sufficient to establish a "conviction" for purposes of the immigration laws.

H.R. Conf. Rep. No. 104-828, at 224 (1996), *quoted in Moosa v. I.N.S.*, 171 F.3d 994, 1002 (5th Cir. 1999).

guilty to or enters a plea of not guilty to possession of . . . marijuana." Va. Code Ann. § 18.2-251. After such a plea, "if the facts found by the court would justify a finding of guilt," the court may, "without entering a judgment of guilt," instead "defer further proceedings and place" the offender on probation. *Id.* In his case, Crespo pled *not* guilty to the offense and the judge found facts justifying a finding of guilt and deferred adjudication over the Commonwealth's objection. Crespo was sentenced to one year of probation, which he served without incident.

### B.

In his petition for review, Crespo and the Government agree that § 1101(a)(48)(A) creates two prongs for finding a conviction. *See also Griffiths v. I.N.S.*, 243 F.3d 45, 52 (1st Cir. 2001). The first prong covers situations in which there has been a "formal judgment of guilt," a circumstance the parties agree did not occur in this case. *Id.* The second prong covers deferred adjudications "and requires the presence of additional elements." *Id.* "The language of the statute as to the second prong requires two elements—(i) [a] sufficient finding of support for a conclusion of guilt, and (ii) the imposition of some form of punishment." *Id.* at 53.

Our review in this case focuses only on the first requirement—whether there was some sufficient finding of guilt to satisfy § 1101(a)(48)(A)(i). A plain reading of the statute confirms that there was not. Subsection (i) specifies five sufficient findings: a finding of guilt by a judge or jury (i.e., a trial), a plea of guilt, a plea of no contest, or an admission *by the alien* of facts sufficient to find guilt. As Crespo correctly notes, *none* of these five possibilities occurred in his case because neither a judge nor a jury found him guilty after a trial and he did not plead guilty or no contest or admit to any facts, let alone facts sufficient to warrant a finding of guilt.

For its part, the Government suggests that the judicial finding of facts sufficient to justify a finding of guilt made by the

judge under § 18.2-251 is the functional equivalent of a judge finding the alien "guilty" as required under § 1101(a)(48)(A)(i). One difficulty with the Government's argument is that, if the judge finding the alien "guilty" was intended to encompass Crespo's situation then the phrase "or has admitted sufficient facts to warrant a finding of guilt" would be rendered superfluous since an alien's plea of guilty would likewise encompass such an admission. We are loathe to contradict the established principle that "[s]tatutes must be interpreted . . . to give each word some operative effect." *See Walters v. Metro. Educ. Enters.*, 519 U.S. 202, 209 (1997). Instead, § 1101(a)(48)(A)(i) is most naturally read to "unambiguously encompass[ ] . . . situations in which . . . the defendant's guilt has been established by a *trial*, plea, or admission." *Herrera-Inirio*, 208 F.3d at 304 (emphasis added). None of those situations occurred in Crespo's case.

Indeed, the language and design of § 1101(a)(48)(A), in its entirety, makes clear that Congress intended a judge's finding of guilt to be a far different scenario than a judge finding facts sufficient to find guilt. By listing five specific situations which constitute a sufficient finding of guilt, Congress drew a line. The Government may be right that Congress would have drawn the line differently if it had been aware of a case like Crespo's, but Congress did not do so and "the fact the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." *U.S. R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980).

## C.

In an effort to contradict this plain language, the Government first points us to *United States v. Campbell*, 980 F.2d 245 (4th Cir. 1992), in which we held that an adjudication under § 18.2-251 counted as a "prior conviction" under 21 U.S.C. § 841. There are at least two critical distinctions that render *Campbell* unpersuasive. First, the phrase "final conviction" did not have a specific statutory definition like the one

provided by § 1101(a)(48)(A). Second, it is unclear from *Campbell* whether the defendant in that case entered a plea of guilty or a plea of not guilty under § 18.2-251.[3] This distinction is important because even Crespo concedes that, if he had pled guilty under § 18.2-251 and had his sentence deferred, the adjudication would qualify as a conviction under § 1101(a)(48)(A) and he would not be eligible for the § 212(h) waiver.

In addition,[4] the Government suggests that its reading of the statute best satisfies the Congressional purpose in enacting § 1101(a)(48)(A)—to promote uniformity by ensuring "the definition of the term 'conviction' . . . not be dependent on the vagaries of State law," *Matter of Punu*, 22 I. & N. Dec. 224, 229 (BIA 1998), and to make it "'easier to remove criminal aliens, regardless of specific procedures in States for deferred adjudications,'" *id.* (quoting H.R. Rep. No. 104-879 (1997)). According to the Government, the Conference Report explained, "aliens who have clearly been guilty of criminal behavior and whom Congress intended to be considered 'convicted' have escaped the immigration consequences normally

---

[3]It seems more likely that the defendant in *Campbell* had pled guilty under § 18.2-251 because the court equated Virginia's deferral statute to that of Michigan, which required either a plea or a finding of guilty for its operation. *See Campbell*, 980 F.2d at 250 n.8.

[4]In its brief, contrary to its position at oral argument, the Government also argued that the statute was ambiguous and, accordingly, that we should defer to the BIA's interpretation of the statute. Because we believe the language of § 1101(a)(48)(A) is plain, we do not reach this argument. We do note, however, that it is far from clear that the BIA actually rendered an interpretation in this case. The IJ's analysis of Crespo's argument consisted of a single sentence in which it concluded, without further explanation, that "[a]ny distinction that may exist between 'facts sufficient to find' guilt and a finding of guilt by a judge or jury" was "not material under the INA." (J.A. at 98). The BIA "agreed" with the IJ and attached a string citation to three cases, *Matter of Salazar*, 23 I. & N. Dec. 223 (BIA 2002), *Matter of Roldan*, 22 I. & N. Dec. 512 (BIA 1999), and *Matter of Punu*, 22 I. & N. Dec. 224 (BIA 1998), none of which address the Virginia statute at issue in this case.

attendant upon a conviction" because of "a myriad of provisions [in state laws] for ameliorating the effects of a conviction." H.R. Conf. Rep. No. 104-828, at 224, *quoted in Moosa* 171 F.3d at 1002. *See also Herrera-Inirio*, 208 F.3d at 305 (noting Congress enacted § 1101(a)(48)(A) in part to "produce the desired uniformity").

However, "[the Supreme Court] ha[s] stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-254 (1992) (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)) (citations omitted). Even assuming the Government is correct that Congress would have intended situations like Crespo's to be covered by the statute, "if the literal text of the statute produces a result that is, arguably, somewhat anomalous-we are not simply free to ignore unambiguous language because we can imagine a preferable version." *Sigmon Coal Co., Inc. v. Apfel*, 226 F.3d 291, 308 (4th Cir. 2000), *aff'd sub. nom. Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002). The Government is asking us to "improve the statute—to amend it, really," to include Crespo's situation. *Id.*

## III.

In this case, performance of our judicial function leads to a simple result: Congress listed five situations in § 1101(a)(48)(A)(i) that constitute a sufficient finding of guilt to ensure that an alien engaged in criminal behavior. Crespo's adjudication under the Virginia deferral statute does not satisfy any of these conditions, and as a result our inquiry must cease. Accordingly, Crespo's petition for review is granted and his case is remanded to the BIA for further proceedings consistent with this opinion.[5]

---

[5]We note that, on remand, Crespo still has a high hurdle to overcome in receiving a § 212(h) waiver because the IJ also found that Crespo had

---

not met the extreme hardship standard. Inexplicably, despite detailed fact-finding and analysis from the IJ on this point, the BIA failed to address this additional ground for denying Crespo relief. We are reviewing only the BIA's decision and because the BIA did not address this argument we decline to do so in the first instance in this case.