**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1356**

MATTHEW DWOSKIN; RANDI DWOSKIN; JENNIFER DECKER; TERESA BUTLER; LINDA CAMPBELL; LINDA CUADRA; ALFRED FIGLEY; KELLY DILLS; STEFANI DILLS; MICHAEL WALSH; JENNIFER WALSH; PHILLIP WERTHEIMER; JOANN WOODS; SHAWN WOODS; KERRIE ZIPPRICH,

        Plaintiffs - Appellants,

SEAN DECKER,

        Intervenor/Plaintiff - Appellant,

v.

BANK OF AMERICA, N.A.

        Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Catherine C. Blake, District Judge. (1:11-cv-01109-CCB)

Argued: March 21, 2018             Decided: April 19, 2018

Before WILKINSON, MOTZ, and KING, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Motz and Judge King joined.

**ARGUED:** James C. White, PARRY TYNDALL WHITE, Chapel Hill, North Carolina, for Appellants. Bradley R. Kutrow, MCGUIREWOODS LLP, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Dhamian Blue, BLUE LLP, Raleigh, North Carolina; Richard D. Heideman, Noel J. Nudelman, Tracy Reichman Kalik, HEIDEMAN NUDELMAN & KALIK P.C., Washington, D.C.; Richard S. Wayne, STRAUSS & TROY, LPA, Cincinnati, Ohio; Leonard B. Simon, LAW OFFICES OF LEONARD B. SIMON, P.C., San Diego, California, for Appellants. Brian P. Troutman, Wm. Grayson Lambert, Charlotte, North Carolina, Brian D. Schmalzbach, MCGUIREWOODS LLP, Richmond, Virginia, for Appellee.

WILKINSON, Circuit Judge:

Plaintiffs brought suit against the defendant Bank of America under the Homeowners Protection Act. They claimed that the bank failed to make certain required disclosures in connection with their residential mortgage loans. The statute is clear, however, that these mortgage insurance disclosures are mandated only if lender-paid mortgage insurance is a condition of obtaining a loan. *See* 12 U.S.C. § 4905(c). Because no such conditions applied to the plaintiffs' loans, nondisclosure was not a Homeowners Protection Act violation.

I.

Each plaintiff in this case obtained a thirty-year, fixed-rate mortgage loan between June 2007 and December 2008 through Bank of America's "No Fee Mortgage Plus" program. The No Fee Mortgage Plus loans were advertised as charging no fees in connection with closing and requiring no private mortgage insurance.

Shortly after launching this product nationwide in 2007, Bank of America began obtaining lender-paid mortgage insurance (LPMI) on certain pools of closed and funded No Fee Mortgage Plus loans. Bank of America explained that this decision was made to increase liquidity during the financial crisis that began to affect the housing market that year. That is, while Bank of America initially planned to keep the No Fee Mortgage Plus loans on its own books, purchasing LPMI gave it the option to sell the loans on the secondary market. LPMI was eventually purchased on a significant proportion of the No Fee Mortgage Plus loans, including on each of the plaintiffs' loans. For those loans which

3

eventually received LPMI, the timeline for purchase of LPMI ranged from one or two weeks after closing to several months after closing.

While looking to refinance their loan, Matthew and Randi Dwoskin learned that Bank of America had purchased LPMI on their loan. In response, they filed a putative class action suit in the District of Maryland, with twelve other borrowers and borrower couples eventually joining them in a consolidated class action complaint. In addition to various state causes of action for fraud and consumer protection violations, the complaint alleged that Bank of America did not provide certain mortgage insurance disclosures required by the Homeowners Protection Act and sought actual and statutory damages.

Following extensive discovery over fourteen months, including production of over 88,000 Bank of America documents and several depositions with Bank of America designees, the district court granted summary judgment to Bank of America on the federal claims. After obtaining a new declaration from a former Bank of America employee, the plaintiffs moved for reconsideration in light of what it described as newly discovered evidence. In response, the district court affirmed its initial decision on the federal claims, granted summary judgment to Bank of America on the state claims, and issued final judgment in favor of Bank of America. The plaintiffs appeal on the grounds that the district court erred in its application of the Homeowners Protection Act, abused its discretion in managing discovery, and wrongly granted summary judgment on the state law claims.

## II.

4

The Homeowners Protection Act of 1998 (HPA) provides, in part, that "not later than the date on which a loan commitment is made for [a] residential mortgage transaction, the prospective mortgagee shall provide to the prospective mortgagor a written notice" of certain information regarding mortgage insurance. 12 U.S.C. § 4905(c). The required disclosures include "a generic analysis of the differing costs and benefits" of lender paid mortgage insurance (LPMI) versus borrower paid mortgage insurance, the fact that LPMI may be tax-deductible, and the fact that LPMI "usually results in a residential mortgage having a higher interest rate than it would in the case of borrower paid mortgage insurance." *Id*.

These disclosures are not required with every mortgage, however. Instead, they are mandated only "[i]n the case of lender paid mortgage insurance that is required in connection with a residential mortgage transaction." *Id.* The plaintiffs in this case argue that this language makes the disclosures mandatory any time a bank purchases LPMI on a loan, even if LPMI is obtained after closing and is not a condition of closing. This reads the statute far too broadly.

In interpreting this statute, like any other, "we look first to its language, giving the words used their ordinary meaning." *Roberts v. Sea-Land Services, Inc.*, 566 U.S. 93, 100 (2012) (quoting *Ingalls Shipbuilding, Inc. v. Director, Office of Workers' Compensation Programs*, 519 U.S. 248, 255 (1997)). The plain meaning of the key statutory phrase "required in connection with a residential mortgage transaction" involves conditions at the time a mortgage loan is closed. In addition to being the most natural reading of the phrase, this interpretation also "give[s] each word some operative effect," as required by

5

ordinary principles of statutory interpretation. *Crespo v. Holder*, 631 F.3d 130, 135 (4th Cir. 2011) (quoting *Walters v. Metro. Educ. Enters.*, 519 U.S. 202, 209 (1997)). The "residential mortgage transaction" is the loan's closing, the phrase "in connection with" conveys the close nexus between satisfaction of the requirement and the loan's closing, and the word "required" means just that—necessary for the transaction to move forward.

The plaintiffs' preferred interpretation of this phrase, by contrast, reads the word "transaction" out of the statute entirely, since in their view a mortgage insurance "requirement" could come into existence at any time during the life of the loan. An interpretation that would render part of the key phrase superfluous must be rejected.

Our conclusion is further confirmed by considering the goals Congress sought to advance by mandating disclosures about the advantages and disadvantages of LPMI. Residential mortgages are among the largest and most complex financial transactions many individuals will undertake. With the significant sums and decades-long commitment often involved, not to mention the variety of legal and financial requirements, even a sophisticated borrower may struggle to identify and weigh all the relevant information. Mortgage insurance is unlikely to be top of mind, and the differences between types of mortgage insurance are unlikely to be obvious. Thus, borrowers may "pay[] for private mortgage insurance that is no longer needed" for the life of the loan, 143 Cong. Rec. S2514 (daily ed. March 19, 1997) (Sen. Richard Bryan), or fail to consider the possibility that lender paid mortgage insurance could "fold[] the insurance payment into a slightly higher interest rate," 144 Cong. Rec. S8268 (daily ed. July 15, 1998) (Sen. Carol Moseley-Braun). Such mistakes might lead consumers to pay

6

more than necessary for their mortgages. The HPA-mandated disclosures directly address these concerns by highlighting how mortgage insurance might affect a borrower's bottom line so that borrowers "can assess the benefits and drawbacks of this product." *Id*.

But such considerations are relevant to a borrower only to the extent that mortgage insurance could affect the terms of his loan. If there is no mortgage insurance requirement influencing their loan terms, there is no reason for borrowers to ponder the theoretical effect of a hypothetical requirement. From a borrower's perspective, LPMI disclosures under those circumstances would make no practical difference. That Congress limited the mandatory disclosures to situations in which LPMI is "required in connection with a residential mortgage transaction" makes clear that Congress did not intend the disclosures as a general education effort. Instead, the disclosures are designed to provide specific information to those most in need of it at precisely the time that it can be most useful.

From the bank's perspective, too, the disclosure requirements are most coherent if limited to circumstances in which loans are conditioned on LPMI. Given the decades-long lifespan of many residential mortgages, it may be impossible to know at the time of closing whether LPMI will ever be needed on a particular loan. For example, a bank may close and fund a mortgage with no intention of obtaining LPMI, but later find that market conditions or the bank's own financial circumstances make LPMI desirable. But from the plaintiffs' perspective, a bank that responds to changing circumstances by purchasing LPMI would be in violation of the Homeowners Protection Act if they had not disclosed information about LPMI before closing, even if closing was decades before.

7

If we were to read the HPA that broadly, a bank might rationally conclude that the safest option is to provide mortgage insurance disclosures to every potential borrower. Such blanket disclosures would protect the bank's ability to obtain LPMI, and would be unlikely to turn away potential borrowers if accurately framed as boilerplate with no implications for the borrowers' loan terms. Yet, as noted above, the HPA was clearly not intended to create a scheme of LPMI disclosures with every loan.

In sum, the language and design of 12 U.S.C. § 4905(c) reveal a single plausible meaning: banks must provide LPMI disclosures only when LPMI is a condition of a loan at closing.

### III.

As the district court concluded, the evidence shows that LPMI was not "required in connection with a residential mortgage transaction" within the meaning of the statute. It is undisputed that securing LPMI was not an explicit condition of any of the plaintiff's loans, all of which were closed and funded before LPMI was purchased for them. Nor was LPMI an implicit condition, because, contrary to the plaintiffs' allegations, the evidence shows that the bank's post-closing purchase of LPMI did not affect the interest rates of the loans or any other loan terms. These facts foreclose the plaintiffs' HPA claims, because the allegedly neglected disclosure requirements were not actually triggered. They also foreclose the plaintiffs' state claims, which the plaintiffs argue should survive summary judgment based wholly on the faulty premise that there is a "genuine issue of material fact regarding the rate increase issue." Plaintiffs' Opening Br. 39. Further, to the extent the state law claims are rooted in Bank of America's failure to

8

disclose information about LPMI, they are preempted by the HPA, which explicitly preempts state laws "relating to . . . any disclosure of information addressed by" the HPA. 12 U.S.C. § 4908(a)(1); *see also Ciolino v. Seterus, Inc.*, 202 F. Supp. 3d 841, 844–47 (N.D. Ill. 2016) (collecting cases).

Perhaps recognizing that the record evidence cannot support their claims, the plaintiffs devote much of their argument to complaints about the discovery process. Specifically, the plaintiffs assert that additional discovery could have uncovered evidence that Bank of America always intended to purchase LPMI on their loans and incorporated the cost of LPMI into the plaintiffs' interest rates. The plaintiffs also assert that the district court should have reconsidered its decision in light of the additional declaration the plaintiffs provided after summary judgment. We review complaints about management of the discovery process and motions for reconsideration for abuse of discretion. *See Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 189 (4th Cir. 2017); *Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244, 247 (4th Cir. 2012). No such abuse occurred here.

Plaintiffs are not entitled to endless discovery to search for evidence for their claims. In this case, even after extensive and wide-ranging discovery, extending over fourteen months and resulting in production of over 88,000 Bank of America documents, the plaintiffs were unable to refer to record evidence to suggest that their claim was meritorious or that additional discovery was likely to provide the evidence they needed. Instead, the plaintiffs repeatedly point to an e-mail and declaration from a former Bank of America employee questioning the No Fee Mortgage Plus loans' advertising based on his

9

speculation that the interest rates might incorporate the cost of the waived fees. But a former bank employee with no personal knowledge of how the rates were set cannot overcome extensive evidence of how those rates were actually set. Moreover, the plaintiffs did not identify additional persons for deposition until the defendant's motion for summary judgment was pending and the most relevant witnesses had already been deposed. In light of the speculative nature of the plaintiffs' claims, the district court was well within its discretion to end the already protracted discovery process and grant summary judgment to the defendant.

## IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.